## OLCOTT *v.* THE TIOGA RAILROAD COMPANY.

A foreign corporation sued in this State cannot avail itself of the statute of limitations. It is, like a natural person, within the exception to the operation of the statute (2 *R. S.*, 297, § 27), by which the time of absence from the State is not to be taken as any part of the time limited for the commencement of an action against it.

*Faulkner* v. *Delaware and Raritan Canal Company* (1 *Denio*, 441), overruled.

APPEAL from the Supreme Court. Action against a corpo ration created by and existing under the laws of Pennsylvania upon a bill of exchange drawn by it in payment for a locomo tive engine, and protested May 21, 1842. The action war commenced in 1856, and the defendant, among other defences, set up that the cause of action did not accrue at any time within six years. The trial was before a referee, who found the fact that the cause of action did not accrue within six years, and thereupon held the action barred, and nonsuited the plaintiff. The judgment entered upon his report having been affirmed at general term in the seventh district, the plaintiff appealed to this court.

*Nicholas Hill*, for the appellant.[1]

I. The case concedes that the plaintiff brought his action as soon as he was able to serve the defendants with process, and that he is not chargeable with any voluntary omission or neglect. The question is, therefore, whether he is to lose his debt simply because he was unable to sue in six years after it fell due, by reason of the absence of the defendants from the State; they being the only parties in default.

II. The statute of limitations is to be construed by looking at all its parts, and endeavoring to collect from the whole a

[1] The argument of this case, on the 14th of April, 1859, was the last in which Mr. HILL was engaged.

uniform, consistent and rational line of policy. And such an effect should be given to its provisions, if possible, as will not impute to the Legislature an intention to do injustice or to violate principles in respect to one class of cases which it professes to hold sacred as to others within the same reason. (*See points third and fourth, and cases cited; Broom's Leg. Max.*, 442, *4th ed.*, "*Ex Antecedentibus*," &c.; 30 *Eng. Law and Eq. R.*, 702, POLLOCK, B.; *Henry* v. *Tilson*, 17 *Verm.*, 479, 486, 487; *Ogden* v. *Strong*, 2 *Paine's C. C.*, 584; *McKay* v. *Detroit*, &c., 2 *Mich. R.*, 138; *Winslow* v. *Kimball*, 25 *Maine R.*, 494.) 1. The legislative intent or will is to control in giving effect to every statute, irrespective of what is due to the mere proprieties of language or the strict and grammatical import of isolated words or phrases. (*See points third and fourth, and cases cited; Broom's Leg. Max.*, 442, "*Ex Antecedentibus*," &c.; 30 *Eng. Law and Eq. R.*, 602, POLLOCK, B.; *Henry* v. *Tilson*, 17 *Verm. R.*, 479, 486, 487; *United States* v. *Freeman*, 3 *How. R.*, 556, 565; *Flavers* v. *Glass*, 22 *Ala. R.*, 621; *Staniels* v. *Raymond*, 4 *Cush. R.*, 316; *Kennedy* v. *Kennedy*, 2 *Ala. R.*, 513, *N. S.*; *Somerset* v. *Dighton*, 12 *Mass. R.*, 384, 385; *Eyston* v. *Studd, Plowd. R.*, 467.) 2. And an intent to do what is unjust, or to discriminate unjustly, and without reason, between different cases of a like kind, is not to be ascribed to the Legislature, unless expressed with irresistible clearness. (*See points third and fourth, and cases cited; Smith's Comm.*, §§ 515–519; *Henry* v. *Tilson*, 17 *Verm. R.*, 479, 486; *Sloan* v. *Bryant*, 8 *Foster's R.*, 70, 71; *Mayor*, &c., v. *Weems*, 5 *Ind. R.*, 547; 24 *Pick. R.*, 370, SHAW, Ch. J.; *Fisher* v. *Blight*, 2 *Cranch's R.*, 390.) 3. These doctrines are especially applicable to those clauses in statutes of limitation which purport to save demands, where there has been no opportunity of suing the defendant by reason of his non-residence, absence or otherwise. (*See points third and fourth, and cases cited; Crosier* v. *Tamlimson*, 10 *Mod. R.*, 71 – 73; *Broom's Leg. Max.*, 700, *4th ed.*; 30 *Eng. Law and Eq.*, 602, POLLOCK, B.; *Chandler* v. *Vilett*, 2 *Sand. R.*, 120, 121; *Sage* v. *Hawley*, 16 *Conn. R.*, 114–116; 2 *Brockenb. R.*, 397, 398, MARSHALL, Ch. J.; *Swain* v. *Stevens, Cro. Charles*, 245; *Lafonde*

*v. Ruddock,* 24 *Eng. Law and Eq. R.,* 239; *William* v. *Jones,* 13 *East's R.,* 439; *Gilman* v. *Cutts,* 3 *Foster's R.,* 384, 385.) (1.) On this ground it has been repeatedly held that a defendant who is simply out of the State is beyond seas, so as to bring the demand within the saving clause of statutes using that phraseology. (1 *Show. R.,* 91, *Anonymous; Ruckmaboye* v. *Mattichund,* 32 *Eng. Law and Eq. R.,* 85; *Lane* v. *Bennett,* 1 *Mees. & Welsb.,* 70; *Munay* v. *Baker,* 3 *Wheat. R.,* 341; *Bank of Alexandria, &c.,* 14 *Peters,* 141; *Pancoast* v. *Addison,* 1 *Harr. & Johns.,* 350; *Forbes* v. *Foot,* 2 *McCord's R.,* 331; *Galusha* v *Colbeigh,* 13 *New Hamp. R.,* 79. (2.) So the phrase "out of the State" embraces all defendants who are beyond its jurisdiction so as to disable their creditors from commencing actions against them, even though they are within its territory. (2 *Laws of N. Y.,* 1788, 265, 266, §§ 1, 12, *Jones & Varick; Sleight* v. *Kane,* 1 *Johns. Cas.,* 76.) (3.) And these clauses have been applied to foreigners who never were in the State until the suit was brought, and who could not return, within the literal or ordinary sense of that term. (2 *R. S.,* 297, § 27; *Ruggles* v. *Keeler,* 3 *Johns. R.,* 267; *Dwight* v. *Clark,* 7 *Mass. R.,* 515; *Buger* v. *Roche,* 11 *Pick. R.,* 39, 40; *Van Hemert* v. *Porter,* 11 *Metc. R.,* 210; *Graves* v. *Weeks,* 19 *Verm. R.,* 179; *Lafonde* v. *Ruddock,* 24 *Eng. Law & Eq. R.,* 239; *Townsend* v. *Deacon,* 3 *Excheq. R.,* 706; *Forbes* v. *Smith,* 30 *Eng. Law & Eq. R.,* 600.) (4.) So though their condition was such when the demand fell due that they could neither return nor even come into the State afterwards; *e. g.,* where they have died abroad, never having been here. (*Davis* v. *Garr,* 2 *Seld. R.,* 124; *Douglass* v. *Forrest,* 4 *Bing. R.,* 686; *Benjamin* v. *De Groot,* 1 *Denio's R.,* 151; *Lafonde* v. *Ruddock,* 24 *Eng. Law & Eq. R.,* 239.) (5.) The above and similar phrases, even when used in saving clauses relating to the absence of the creditor, have been uniformly applied in the same extensive and liberal sense to save the demand. (*Lafonde* v. *Ruddock,* 24 *Eng. Law & Eq. R.,* 239; *Townsend* v. *Deacon,* 3 *Excheq. R.,* 706; *Strithorst* v. *Græme,* 2 *Wm. Bl. R.,* 723; *S. C.,* 3 *Wils. R.,* 145; *Williams* v. *Jones,* 13 *East's R,* 439.) (6.) Nor is there the slightest room for rational doubt

Olcott *v.* The Tioga Railroad Company.

that the word 'person' in such and the like clauses is sufficiently comprehensive to embrace foreign corporations as well as natural persons. (2 *R. S.*, 718, § 11; *id.*, 703, § 35; *Smith's Comm.*, § 698; *Louisville* v. *Letson*, 2 *How. R.*, 497; *Society, &c.*, v. *Powlet*, 4 *Peters' R.*, 505, 506; *Planters' Bank, &c.*, 8 *Porter's Ala. R.*, 404; *Bushel* v. *Commonwealth*, 15 *Serg. & Rawle*, 173, 175–177; *Farm. & Mech. Bank* v. *Little*, 8 *Watts. & Ser.*, 207, 220; 2 *Brockenb.*, 393, 397, 398, MARSHALL, Ch. J.; *Martin* v. *Branch Bank*, 14 *Louis. R.*, 415; *Libby* v. *Hogdon*, 9 *New Hamp. R.*, 394–396; *Cortis* v. *The Company, &c.*, 7 *Barn. & Cress.*, 314; 2 *Eng. Law & Eq. R.*, 388, 394, PARKE, B.; *Knox* v. *Protection Ins. Co.*, 9 *Conn. R.*, 430, 434, 435.)

III. Our statute of limitations, when viewed as a whole, clearly recognizes the justice, and expresses the intent, of exempting from its operation all demands held by persons who are legally disabled from prosecuting them during the prescribed time, by reason of the absence of the defendant or otherwise; and inaccurate words should not be allowed to defeat this declared policy in respect to any class of demands. (2 *R. S.*, 295–299.)　1. The intent plainly expressed is that every creditor shall have six full years to sue in the courts of this State, and that he shall not lose his demand except by such an omission to sue as the law deems voluntary and negligent. (*See point second, subd.* 3, *pl.* 1–6; 2 *R. S.*, 295–299, §§ 18, 24, 26, 27, 32–37; 2 *Sandf. S. C. R.*, 519, 528, 529, DUER, J.; *Cole* v. *Jessup*, 10 *How. Pr. R.*, 515; *S. C., Seld. Notes, April*, 1854, *p.* 48; *Gilman* v. *Cutts*, 3 *Foster's R.*, 376; *Smith* v. *Bond*, 8 *Ala. R.*, 386; *Vanlandingham, &c.*, 4 *Gillm. Ill. R.*, 125; *Harden* v. *Palmer*, 2 *E. D. Smith's R.*, 172; *Broom's Leg. Max.*, 700, *4th ed.*)　2. The section enjoining the obligation to sue in six years, even if viewed separately, contemplates not only the correlative right to sue in that time, but the legal ability to do so, or it is contrary to the first principles of natural justice. (2 *R. S.*, 295, § 18.)　(1.) The words of this section, notwithstanding their generality and seeming comprehensiveness, are to be restricted to cases within the precise predicament imported by them, to effect the intent. (*See point second, and its subdivi-*

*sions;* 7 *Mass. R.*, 517, 518, SEDGWICK, J.; *Richards* v. *Maryl.*, 8 *Cranch's R.*, 85, 92, 93; *Hernandez, &c.,* 2 *Mart. Louis. R.*, N.S., 431–433; *S. C. on error,* 12 *Wheat. R.*, 129; *Morgan* v. *Robinson,* 12 *Mart. Louis. R.*, 76, 77; *Trecothius, &c.,* 4 *Mason's R.*, 16, 21–28; *Phillips* v. *Sanders,* 15 *Geo. R.*, 518; *Lindsey* v. *Miller,* 6 *Peters' R.*, 666, 675; *Academy* v. *Phil.*, 22 *Penn. R.*, 496; *Leavitt* v. *Blatchford,* 17 *N. Y. R.*, 521, 543; *Warner* v. *Fowler,* 8 *Maryl. R.*, 25; *State* v. *Dale,* 3 *Wis. R.*, 795.) (2.) On this ground it has been often held that so long as there is no party within the jurisdiction capable of being prosecuted *in invitum,* no complete "cause of action" can be said to accrue or exist. (*Douglass* v. *Forrest,* 15 *Eng. Com. Law R.*, 120; 8 *Cranch's R.*, 92, 93, JOHNSON, J.; 2 *Mart. Louis. R.*, N. S., 431–433, MATHEWS, J.; 12 *id.*, 76, 77, MATHEWS, J.; 7 *Mass.*, 517, 518, SEDGWICK, J.; *Davis* v. *Garr,* 2 *Seld. R.*, 124; *Angell on Lim.*, §§ 54–62, 3*d ed.*) 3. But the 18th section, when viewed in connection with the saving clauses, clearly evinces an intent to except every case where the creditor is prevented from suing by the absence of the debtor from the State. (2 *R. S.*, 295, 297, §§ 18, 27; *see cases cited subd.* 2 *of this point; also point second, subds.* 1–3, *and cases;* 2 *Sandf. S. C. R.*, 519, 528, 529, DUER, J.; *Cole* v. *Jessup,* 10 *How. Pr.*, 515; *S. C., Seld. Notes, April,* 1854, *p.* 48; *Sage* v. *Hawley,* 16 *Conn. R.*, 114–116; 45 *Eng. Com. Law R.*, 523, 525, DENMAN, Ch. J.; *Broom's Leg. Max.*, 700, 4*th ed.*) 4. That such was the intent in respect to all demands against absent *natural persons* is admitted, and no reason ever existed for discriminating in favor of absent artificial persons owing debts to our citizens; nor can any be imagined. (1 *R. S.*, 297, § 27; *see point second, subds.* 1–3; *also point fourth, and its subdivisions.*)

IV. So far as it can be deemed true, except in a figurative and rhetorical sense, that foreign corporations must dwell in the place of their creation, and cannot migrate, it furnishes a reason for including them within the saving clause, along with all other debtors dwelling abroad; not for excluding them, and then violating the maxim which declares that men ought not to be punished for omitting to do what is impossible. (2 *Bur-*

rill's Law Dict., "Necessitas," &c.; Moore v. Hussey, Hob. R., 96, 97; Farmers & Mec., &c., 8 Watts & Ser., 230; see point second, subds. 1–3; also point third, and its subdivisions; 13 Peters' R., 588, TANEY, Ch. J.; Smith's Comm., § 698; Society, &c., v. Pawlet, 4 Pet. R., 505, 506; Louisville v. Letson, 2 How. R., 557–559; 15 Ser. & Rawle, 175–179, ROGERS, J.; Libby v Hogdon, 9 N. H., 394–396; Martin v. Branch Bank, 14 Louis. R., 416; Knox v. Protection Ins. Co., 9 Com., 430, 434.) 1. Such corporations, though they cannot change their residence, may voluntarily come into this State, and their capacity to do so, for the purpose of contracting debts, acquiring property, and suing and being sued, has been almost universally recognized. (2 R. S., 297, § 27; id., 718, § 11; id., 457, §§ 1, 15; Laws of 1849, p. 142; Code, §§ 134, 135; Laws of 1855, p. 470, 471; 9 New Hamp. R., 396, 397, WILCOX, J.; 13 Peters' R., 590–592, TANEY, Ch. J.; Lumbard v. Aldrich, 8 New Hamp. R., 31; Society, &c., v. Pawlet, 4 Peters' R., 505, 506; 15 Ser. & Rawle's R., 175–179, ROGERS, J.; Martin v. Branch, &c., 14 Louis. R., 415; Day v. Essex Co., &c., 13 Verm. R., 97; St. Louis, &c., v. Cohen, 9 Missouri R., 422; Farmers' & Mech. Bank v. Little, 8 Watts & Ser., 207, 220; Locke on For. Attachment, 1, 2; Cook v. Champlain, &c., 1 Denio's R., 91, 98; Paulding v. Hud. R. Man., &c., 2 E. D. Smith, 38; Bard v. Poole, 2 Kern., 495; Silver Lake Bank v. North, 4 Johns. Ch., 370.) 2. Our law encourages dealings with foreign corporations, and if it also declares that claims against them shall be forfeited by not suing in six years, notwithstanding this is impossible by reason of their absence, its policy is not only absurd but iniquitous. (See the books last above cited; also points second and third, and their subdivisions.) 3. A construction of the clause in question which ascribes to the Legislature an intent to restrict its operation to claims against natural persons, and exclude from it the more numerous class held against foreign corporations, is to be avoided if possible. (See points second and third and their subdivisions; Smith's Comm., §§ 516–519; Henry v. Tilson, 17 Verm. R., 479, 487; Sloan v. Bryant, 8 Foster's R., 70, 71; 22 Penn. R., 497, 498, LEWIS, J.; Fisher v. Blight, 2 Cranch's R., 390; Staniels v.

*Raymond,* 4 *Cush. R.,* 316; *Mayor* v. *Weems,* 5 *Indiana R.,* 547; 24 *Pick. R.,* 379, SHAW, Ch. J.) 4. Such a construction cannot be made without assuming that more respect is due to the mere words used in a statute, than to its scope, intent and object; a proposition generally untrue, but pre-eminently so in respect to the saving clause in question. (*See points second and third and their subdivisions.*) 5. The fundamental error of the court below consists in ignoring the rule that when terms used in a former statute have received a judicial construction, they are to be understood in the same sense when used in latter statutes relating to the same or like subjects. (*Commonwealth* v. *Hartnett,* 3 *Gray's R.,* 450; *Whitcomb* v. *Rood,* 20 *Verm.,* 49; *Ruckmaboye* v. *Mollichund,* 32 *Eng. Law & Eq. R.,* 84; 30 *Eng. Law & Eq.,* 600, 602, POLLOCK, C. B.; *Ex parte Vincent,* 26 *Ala. R.,* 145; *State* v. *Swope,* 7 *Ind. R.,* 91; *Burnham* v. *Stevens,* 33 *New Hamp. R.,* 256; *Moors* v. *Banker,* 9 *Foster's R.,* 420.) (1.) Hence the words "any person" must be understood as embracing all who may be sued in our courts, whether they are citizens, aliens or foreign corporations. (*See points second and third, subd.* 3, *pl.* 1–6; *also subd.* 1 *of this point, and books cited.*) (2.) The words "out of the State" embrace all who are beyond its jurisdiction when their debts fall due, whether they have capacity to dwell here or not. (*See point first, subd.* 3, *pl.* 1–6; *also subd.* 1 *of this point, and books cited; Sleight* v. *Kane,* 1 *Johns. Cas.,* 76; *Society* v. *Pawlet,* 4 *Peters' R.,* 505, 506; *Louisville* v. *Letson,* 2 *How. R.,* 557–559; 15 *Ser. & Rawle,* 175–179, ROGERS, J.; *Martin* v. *Branch Bank,* 14 *Louis. R.,* 415; 9 *New Hamp.,* 395–397, WILCOX, J.) (3.) And the words "return," "depart," "reside," &c., embrace all who can come here in any form, so as to be subjected to the jurisdiction of our courts. (*See point first, subd.* 3, *pl.* 1–6; *also subd.* 6 *of this point, and books cited;* 30 *Eng. Law & Eq. R.,* 601, ALDERSON, B.; 9 *New Hamp. R.,* 394, 396, 397, WILCOX, J.; *Day* v. *Essex Co., &c.,* 13 *Verm. R.,* 97; *St. Louis, &c.* v. *Cohen,* 9 *Missouri R.,* 422; *Louisville* v. *Letson,* 2 *How. R.,* 557–559; *Cook* v. *Champlain, &c.,* 1 *Denio's R.,* 91–98.)

Olcott *v.* The Tioga Railroad Company.

V. If the statute in question is read by the aid of the glossary which judicial decisions have thus furnished for expounding its terms, and with due reference to the liberal mode of interpretation always applied to statutes of a like character, there is no necessity for attributing to the Legislature an intent to discriminate, without reason, and contrary to the first principles of justice, between foreign corporations and absent natural persons. (*See point second, subds.* 1–3; *also points third and fourth and its subdivisions.*)

VI. The theory that foreign corporations cannot exist in this State so as to be subjected to an action without their consent, is fatal to the defence. For it proves not only that the defendants were beyond the jurisdiction of our courts when the demand fell due, but they were never within it until they appeared and pleaded; and if so, no complete cause of action existed or arose till that time. (*See point second, subds.* 1 *and* 3; *Angell on Limit.,* §§ 54–62; *Douglass* v. *Forrest,* 15 *Engl. Comm. Law R.* ; *S. C.,* 4 *Bing. R.,* 686; 1 *Moore & Payne,* 663; *Davis* v. *Garr,* 2 *Seld. R.,* 124; 7 *Mass. R.,* 517, 518, SEDGWICK, J.; 8 *Cranch's R.,* 85, 92, 93, JOHNSON, J.; *Hernandez, &c.,* 2 *Mart. Louis. R., N. S.,* 431–433; *S. C., on error,* 12 *Wheat. R.,* 129; *Morgan* v. *Robinson,* 12 *Mart. Louis. R.,* 76, 77; *Trecothick, &c.,* 4 *Mason's R.,* 16, 21–28.)

VII. The only remedy by action which the statute contemplates is the one tendered by our laws and administered in our courts, and the plaintiff is not to be barred by reason of laches in not availing himself of other remedies. It is no part of the policy of this State to compel men to leave its jurisdiction, and invoke the justice and comity of foreign sovereignties, under penalty of forfeiting their rights if they omit to do so. (2 *R. S.,* 295, 297, §§ 18, 27; *See point third, subds.* 1 *and* 2, *and cases cited; See Code,* §§ 8, 73 *et seq.; Ford* v. *Babcock,* 2 *Sandf.* 61, *R.,* 528, 529.)

VIII. If it can possibly be held that demands against foreign corporations are not within the very words of the saving clause in question, still that clause, when viewed in connection with the one declaring the duty to prosecute, shows that the statute

of limitations is not applicable to such demands under any circumstances; especially on the theory of the court below that corporations of this class cannot return or come into the State. (*See points third and fourth and their subdivisions; see also point sixth and its subdivisions.*)

IX. There is scarcely a pretence for the argument used by the court below that the decision in the case of *Faulkner* v. *The Delaware and Raritan Canal Co.* (1 *Denio*, 441), should be upheld on the maxim *stare decisis.* That decision may have compelled creditors in some instances to go abroad, and seek remedies elsewhere, but it has not become a rule of property, nor is any public mischief likely to flow from its reversal. (*Fol* 343 – 359, SMITH, J.; 12 *How. R.*, 448, 449, TANEY, Ch. J.; 17 *N. Y. R.*, 542 – 544, JOHNSON, Ch. J.; 17 *N. Y. R.*, 550, SELDEN, J.)

*John H. Reynolds*, for the respondent.

I. The defendant is a corporation, created by and existing under the law of Pennsylvania. The alleged cause of action did not accrue within six years, and is barred by the statute of limitations.   1. By the statute (§ 18) the right of action in this case is limited to six years from the day it accrued, unless the case is within some of the exceptions.  The section is applicable to all cases, whether the debtor be a natural person or corporation. (2 *R. S.*, 295, § 18.)   2. It is not claimed that the case comes within any of the exceptions, unless it is within that created in section 27 (2 *R. S.*, 297, § 27), and we submit it is not, and so it has been adjudged. (*Faulkner* v. *Del. & Rar. Canal Co.*, 1 *Denio*, 441.)   3. The 27th section of the statute does not apply to corporations, but to natural persons only. The language of the section makes it plain that it has application only to a debtor who is capable of migration.   4. The term 'persons,' as a general rule, when used in statutes, is confined to natural persons, and corporations are not included, unless made so by the provisions of the act. (*McQueen* v. *Middletown Manf. Co.*, 16 *John.*, 5; *Bank of Ithaca* v. *King*, 12 *Wend.*, 390;

Olcott *v.* The Tioga Railroad Company.

*School Directors* v. *Carlisle Bank,* 8 *Watts,* 192; *Blair* v. *Worley,* 1 *Scamm.,* 187.) 5. Corporations are not included within the words of the section, nor is there anything in the policy of the statute requiring a judicial construction which shall embrace them. (*a.*) Corporations have no capacity to migrate, and can have no legal existence beyond the territorial limits of the sovereign by which they are created. (*Bank of Augusta* v. *Earle,* 13 *Pet.,* 519; *Runyan* v. *Lessees of Costar,* 14 *id.,* 129; *McQueen* v. *Middletown Manf. Co.,* 16 *John.,* 5, 6.) (*b.*) It is plain that in framing the exception covered by section 27, the Legislature contemplated natural persons having migratory functions, and not artificial beings, doomed by the laws of their creation to a fixed and permanent abode. (*c.*) The first words of the section are: "If at the time when any action specified in this article shall accrue against any *person, he* shall be out of this State, *such* action may be commenced within the time herein respectively limited, after the *return* of *such person* into the State," &c. The word *he* indicates the sense in which *person* was intended to be used. (12 *Wend.,* 392, *per* SAVAGE, Ch. J.) (*d.*) Besides, it is impossible that a foreign corporation can return to this State, or ever in legal contemplation be within its territory as a legal being; nor can a domestic corporation ever go beyond the limits of the State, so that its return is possible. Moreover, it is provided that if the action is against a person out of the State, such action may be brought after the return of the person. Hence the possibility of a return, and the physical capacity to do so was contemplated by the lawmakers, and the exception cannot be extended to a being incapable of returning, or of ever coming within the jurisdiction of the State. (*e.*) The case of a person dying without the State, against whose representatives an action in certain cases may be brought, affords no argument in favor of the construction contended for by the plaintiff. In such case, the migratory capacity and the possibility of a return exists until terminated by death. The action in such case is allowed against the representatives of the decedent who are appointed under our laws. In this proceeding there is in some sense a return to this State

of the legal representative of the party dying, who alone is authorized to represent his estate either by suing or being sued. So far as concerns rights of property or in action, the representative succeeds to and brings within the jurisdiction of our laws the same rights and obligations which the party dying abroad had at the moment of his death. In the case of a corporation, no such state of things can by possibility exist. (*f.*) The other case, provided for in section 27, of a person departing from the State after a cause of action has accrued against him, clearly can have no application to a corporation, unless it be held that the Legislature were providing for cases which could not by any possibility ever occur, and no such absurd purpose can be imputed to the lawmakers. 6. That a corporation may send its agents beyond the State in which it exists, and make contracts which courts will respect and enforce, can make no difference in the legal construction of the statute. The fact that their existence is recognized in other jurisdictions than that in which they reside, cannot be material to the question of construction, or in ascertaining the intent of the Legislature.

II. It appears, from the case, that the contract upon which the defendant is sought to be held, was made in the State of Pennsylvania. It was a foreign contract made by a foreign corporation. As the plaintiff seeks to bring the defendant within an exception to the operation of the statute of limitations, he must show that he comes within the plain words of the statute. (*Sacia* v. *De Graff*, 1 *Cow.*, 356; *Ang. on Lim.*, ch. 14, § 194; *Bucklin* v. *Ford*, 5 *Barb.*, 393; *Beckford* v. *Wade*, 17 *Ves.*, 87.) 1. It is not the policy of the courts to multiply exceptions to the operation of general statutes, unless the plain meaning of words employed require such an interpretation. No considerations of equity can be resorted to, to give any other interpretation to a statute than is indicated by the words employed. (*Ang. on Lim.*, §§ 485, 486; *Demarest* v. *Wynkoop*, 3 *John. Ch.*, 146; *McChisky* v. *Cromwell*, 1 *Kern.*, 61, *per* ALLEN, J.; *McIver* v. *Ragan*, 2 *Wheat.*, 25; *People* v. *Newell*, 3 *Seld.*, 97, *per* JOHNSON, J.) 2. If the words used in a statute are ambiguous or admit of two senses, the courts will read and interpret them

Olcott *v.* The Tioga Railroad Company.

so that the intention of the Legislature may be carried into effect; but courts never impute an intent to the Legislature which involves absurdity. (*Dwar. on Stat.*, ed. 1848, 582–588; *Smith's Com.*, 662; *Commonwealth* v. *Kimball*, 24 *Pick.*, 390.) 3. The provisions of the Revised Statutes (2 *R. S.*, 778, § 11), extending the word 'person' when used in a statute, in some cases, to corporations, does not apply to this case. There is "something in the subject" repugnant to such a construction. It cannot be supposed, when making provision against the consequences of going beyond the State and returning to it, the Legislature had in view a party incapable of moving from place to place—if in the State, of going out, or if out of the State, of coming within it. 4. The decision of the Supreme Court (1 *Denio*, 441), giving a construction to the statute, has been acquiesced in as the true interpretation, and should not now be changed, except upon the clearest evidence of error.

III. There is nothing in the present case, nor can there be in any case, which invites any strained construction of the statute for the purpose of working an imaginary equity. 1. No possible reason can be assigned or imagined for not bringing the suit within six years. 2. It could have been brought in Pennsylvania, where the case properly belongs, and where the contract was made, or it could have been commenced in our courts. 3. It cannot be said that the plaintiff was awaiting the return of the defendant to this State, that being impossible. 4. If parties deal in the promises of foreign corporations, they are supposed to do so with full knowledge of all the inconveniences which may attend an effort to enforce them—whether such transactions be extensive or otherwise, will not work any change in the interpretation of a statute.

IV. If section 27 applies to foreign corporations, the result is that there is no period of limitation to actions brought in our courts against such parties.

DENIO, J. It cannot be doubted but that it was the general object of the statute of limitations to save the remedy of the creditor in all cases where he was prevented from prosecuting

the debtor in our courts, in consequence of the absence of the latter from the State. (2 *R. S.*, 295, 297, §§ 18, 27.) That such is its effect in respect to natural persons is conceded. If the debtor, being an individual, resided out of the State when it accrued, no period, however great, will bar the claim while he continues so to reside. There is no apparent reason, in the nature of the case, for discriminating in this respect in favor of a foreign corporation; but it is argued that the provision saving the rights of the creditor is clothed in such language that it cannot without violence be applied to any except natural persons. This is not on account of the use of the word 'person' in the 27th section, for that will embrace a corporation provided there is nothing in the connection in which it is used repugnant to such a construction. (2 *R. S.*, 778, § 11.) But it is true that returning to a State or departing from it are acts which cannot be predicated of any but natural persons. It must therefore be conceded that the latter branch of the section, which provides that if after a cause of action shall have accrued "such person shall depart from and reside out of this State," the time of his absence shall not be reckoned as part of the time limited, can have no application to a corporation existing under the laws of this State; and there would be no use in such an application of it, for our corporations can always be sued in our courts. It is not so clear, however, that the former part of the section must necessarily be limited to the case of a debtor who has the ability to return to the State. The provision is that if at the time the cause of action shall accrue against any person, he shall be out of this State, such action may be commenced within the term before limited after the return of such person into this State. But suppose the person being an artificial, corporate body, legally confined to the territory of another State, cannot by possibility return here, then by a verbal construction of the sentence the action may be commenced at any time; for the period of limitatior will never commence to run. Ordinarily it is not necessary, in order to bring a subject within the purview of a statute, that every particular of the statutory language should apply to it, provided

the intent to embrace it is clear. (*Spraker* v. *Cook*, 16 *N. Y.*, 567.)

The courts have uniformly applied to statutes of limitation a liberal construction, and in many instances have accommodated the strict language of the act so as to effectuate the general intention of the Legislature. Thus the statute (4 *Anne, ch.* 16, § 19) provides, in nearly the same language as our act, that if the person against whom a cause of action shall accrue shall at the time be beyond the seas, the action may be brought within the time limited after his return. In *Forbes* v. *Smith* (30 *Eng. Law & Eq.*, 600), where the statute was pleaded, it was held not to be necessary to aver in the replication that the defendant had returned. The court said that the plaintiff might sue at any time not greater than six years after the return of the defendant, but should he desire to sue before his return he might take that course. It was conceded that this construction was a departure from the strict language of the statute. In the statute of *James* there is a saving of the rights of parties in whose favor actions exist; and it is declared that they shall be at liberty to bring their actions within the time of limitation "after they shall have returned from beyond the seas," &c. Suppose the party never returns, but, long after the action accrued, dies abroad: By the terms of the statute the action is barred, and the party is not brought within the saving, for he has never returned, and, being dead, he never can return. That precise question arose in *Townsend* v. *Deacon* (3 *Exch.*, 706), and it was held that the executors might maintain the action, though it was admitted that, strictly speaking, the creditor had never returned. In *Ruggles* v. *Keeler* (3 *John.*, 263), the question was, whether the statute of limitations of this State had run against a demand contracted in Connecticut when both parties were citizens of that State. The statute was, that if the debtor, at the time the cause of action accrued, should be out of the State, the suit might be brought within the time limited "after the *return* of the person so absent into the State." It was plausibly argued that, as both parties resided out of the State at the time the contract was made, no return into this

State could have been contemplated, and that, therefore, the case was not within the proviso. The court held, KENT, Ch. J., giving the opinion, that coming within our jurisdiction was within the meaning of the proviso, though the party had never been here before; and he referred to cases to show that this was the construction which had been put upon the English statute. The same point, in substance, was determined in the English Court of Common Pleas, in 1854, under the statute of *James*, which, as has been mentioned, allows the plaintiff to maintain an action, which would otherwise be barred, if he sues within the time limited after having "returned from beyond the seas." The plaintiff was a Frenchman, and had never been in England, and the defendant's counsel argued that he could not return, not having been in England before, and that the exception applied only to persons who could be said to return. The point was held not to be tenable. MAULE, J., said: "The courts have taken notice of the scope and intention of the statute of limitations." (*Lafonde* v. *Ruddock*, 24 *Eng. Law & Eq.*, 239.) The same point had been ruled many years before in *Strithorst* v. *Graeme* (3 *Wils.*, 145), where the court said that if the plaintiff, who was a foreigner, did not come to England in fifty years, he still had his right of action, and if he never came, but died abroad, his executors or administrators would have it after his death. In *Benjamin* v. *De Groot* (1 *Denio*, 151), a similar question arose under the section of the Revised Statutes now under consideration. The action was against an executor, and the statute was pleaded; to which there was a replication that the testator resided in Great Britain when the cause of action accrued, and never returned to this State, but died there; that letters testamentary were taken out here on a certain day, and the action brought within six years afterwards. The defendant demurred, and it was argued on his behalf that the 27th section of the act related only to the case of a defendant out of the State when the cause of action accrued and returning into it, and that it gave the plaintiff six years after his return but had no application where he died abroad. But the replication was held good, the court saying that though the

case was not within the words of the section, it was within its equity. This court, in *Davis* v. *Garr* (2 *Seld.*, 124), determined the same point in the same way, on the authority of the last mentioned case, and of *Douglass* v. *Forrest* (4 *Bing.*, 686).

There has been a similar course of decision in the courts in Massachusetts. The saving clause in their statute was that, "If any person or persons against whom there is, or hereafter shall be, any cause of suit, &c., who, at the time the same accrued, was without the limits of this Commonwealth, and did not leave property or estate therein" that could be attached, "that then and in every such case, the person that is entitled to bring such suit or action shall be at liberty to commence the same within the respective periods before limited after such persons return into this government." In *Dwight* v. *Clark* (7 *Mass.*, 515), the statute was pleaded and it appeared by the pleadings that the defendant was an inhabitant of Connecticut when the promises were made, and had never before that been an inhabitant of Massachusetts, and that he did not come to the latter State until after the period of limitation had elapsed. It was argued on his behalf that the exception did not apply, because leaving property and returning to the Commonwealth were things which could not be predicated of one who had never lived in Massachusetts. The court, however, said that it was a much more reasonable construction to hold that the exception was intended to be general and to comprehend all persons who were without the Commonwealth and had not attachable property within it. The point was again affirmed in *Bulger* v. *Roche* (11 *Pick.*, 39).

The course of adjudication established by these cases authorizes us, I think, to carry out the obvious intention of the Legislature, in the statute before us. We can see no motive which it could have had for discriminating in favor of a foreign corporation, or any indication of an intention so to discriminate. The language of the exception in the first branch of the 27th section is not in all respects congruous to the case of a corporation; but there is an incongruity nearly as great in applying the phrase "returning into this State" to a person

who had never resided here, and quite as great in accommodating it to the case of one who had died abroad, and who could not by any possibility return. If the consequence is that a corporation in another State or country cannot enjoy the advantage of our act of limitation, the same is true of a natural person domiciled abroad and whose circumstances prevent his coming within our jurisdiction. The policy of our law is that no persons natural or artificial who are thus circumstanced, can impute laches to their creditors or those claiming to have rights of action against them in not pursuing them in the foreign jurisdiction where they reside. It was equitable and in accordance with the policy of the law of limitation that when the reason for excusing the creditor from the use of diligence should cease, by the debtor coming into the State, the obligation to use diligence should again attach. In engrafting this policy upon the statute the Legislature made use of general words which, though adequate to describe a corporation, did not contain any language referring specifically to a debtor who could not, by its constitution, pass from one territorial jurisdiction to another.

The case of *Faulkner* v. *The Delaware, &c., Co.* (1 *Denio,* 441), was decided without a reference to the authorities which have been referred to or a full consideration of the policy of the act, and should not, I think, be followed.

The judgment of the Supreme Court must be reversed.

All the judges concurring,

Judgment reversed, and a new trial ordered.