(154 App. Div. 130.)

SMITH v. WESTERN PAC. RY. CO.

(Supreme Court, Appellate Division, First Department.   December 20, 1912.)

1. LIMITATION OF ACTIONS (§ 46*)—TIME OF ACCRUAL—BROKER'S COMMISSIONS.
    A bond broker's cause of action for commissions for procuring purchasers for first mortgage bonds accrued when the corporation executed its mortgage, pursuant to the acceptance of the purchasers, procured by the broker, of the offer to sell.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253;  Dec. Dig. § 46.*]

2. LIMITATION OF ACTIONS (§ 46*)—COMMISSIONS OF BROKERS—TIME OF ACCRUAL.
    A broker's commissions become due upon the acceptance by his employers of purchasers produced by him ready, willing, and able to perform upon the prescribed terms.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 240–253;  Dec. Dig. § 46.*]

3. LIMITATION OF ACTIONS (§ 2*)—PERSONS ENTITLED TO PLEAD—FOREIGN CORPORATIONS.
    Code Civ. Proc. § 390, provides that where a cause of action, not involving realty, accrues against a nonresident, an action cannot be brought thereon in the state after the time limited by the laws of his residence for bringing a like action, except by a resident and in one of the following cases;  that is, where the action originally accrued in favor of a resident, etc.   Section 401 provides that if, when a cause of action accrues against a person, he is out of the state, it may be commenced within the time limited after his return, and if, after an action has accrued against a person, he leaves the state and remains absent for one year or more, his absence is not a part of the period of limitation.   *Held*, that a foreign corporation, sued by a nonresident on contract for broker's commissions, may plead the statute of limitations of the state of its domicile.
    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8;  Dec. Dig. § 2.*]

4. CORPORATIONS (§ 668*)—SERVICE OF PROCESS—FOREIGN CORPORATIONS.
    Service of process upon an officer or director of a foreign corporation casually within the state gives the court jurisdiction of such corporation.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2603, 2606–2627;  Dec. Dig. § 668.*]

Appeal from Trial Term, New York County.

Action by Charles E. W. Smith against the Western Pacific Railway Company.   From a judgment dismissing the complaint, plaintiff appeals.   Affirmed.

See, also, 144 App. Div. 936, 129 N. Y. Supp. 1146.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Herrick, Breckinridge, Carney & Sloane (D. Cady Herrick, of New York City, of counsel), for appellant.

Byrne & Cutcheon, of New York City (F. W. M. Cutcheon, of New York City, of counsel, and James Byrne and Harrison Tweed, both of New York City, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CLARKE, J. The action is to recover $1,244,900 and interest, which the plaintiff claims by virtue of an oral contract with defendant as commissions, in consideration of alleged services in assisting to market the first mortgage bonds of the defendant. Plaintiff is a bond broker, a resident of New Jersey, and the defendant is a foreign corporation, organized and existing under the laws of the state of California. The first cause of action set up in the complaint is upon an agreement to pay a sum of money equal to $2\frac{1}{2}$ per centum of the par value of $50,000,000 of bonds; and the second cause of action is for the same amount upon the same transaction, but is upon a quantum meruit.

The defendant sets up, inter alia, as a defense in bar, the California statute of limitations. The Special Term, by order, directed the separate trial of the plea in bar, and pursuant thereto the trial of said issue was had at the Trial Term, a jury being waived. The learned court found as matters of· fact: That this action and the causes of action alleged in the complaint are upon alleged contracts and obligations founded upon alleged agreements made and entered into in July, 1904, in the state of New York. From prior to the time at which the plaintiff's claims, alleged contracts, and employment, referred to in the complaint, were made, continuously down to a time subsequent to the date of the commencement of this action, plaintiff was not a resident or a citizen of the state of New York. Defendant is not and never has been a resident of the state of New York, but was and is a railroad corporation organized under the laws of the state of California, and is a resident and citizen thereof. That this action was commenced on the 14th of January, 1909, and was not commenced within two years after the causes of action, if any, alleged in the complaint, accrued. That at the times mentioned in the complaint there were, and ever since have been, in force in the state of California the following statutory provisions of the Code of Civil Procedure thereof:

"Sec. 312. Commencement of Civil Actions.—Civil actions without exception can only be commenced within the periods prescribed in this title after the cause of action shall have accrued unless where in special cases a different limitation is prescribed by statute."

"Sec. 335. Periods of Limitation Prescribed.—The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"

"Sec. 339. Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument in writing, or founded upon an instrument of writing executed out of the state."

That more than two years had elapsed subsequent to the time when this action or causes· of action alleged in the complaint accrued, and said causes of action were prior to the commencement of this action barred by the statutes of the state of California above mentioned. And, as conclusions of law, that the causes of action were barred by the statute of limitations of the state of California and of this state, and that the defendant was entitled to judgment dismissing the complaint. From the judgment entered thereon plaintiff appeals.

[1] The first question presented is: When did the causes of action accrue? The complaint alleges that:

"In about the month of July, 1904, in the city of New York, the defendant entered into an agreement with the plaintiff to employ the plaintiff to assist the defendant in the sale of $50,000,000 par value of the first mortgage bonds of the defendant to be issued and sold by the defendant, the said bonds to be secured by the first mortgage, hereafter mentioned; and in consideration of said employment, and the promises of the defendant to the plaintiff in this cause of action hereinafter specified, the plaintiff in and by said agreement promised to assist the defendant in devising plans to give said bonds a substantial value, and to assist said defendant in selling and finding purchasers for the said bonds, or in finding persons or corporations through or by the assistance of whom purchasers for said bonds could be procured; and the defendant in said agreement further promised that the defendant and its officers and agents should and would co-operate with and assist the plaintiff in procuring purchasers for the said bonds, all to the end that by the co-operation of the efforts of the plaintiff and of the defendant, its officers and agents, and such other persons or corporations as the plaintiff might find and procure the assistance of, the said bonds should be sold, and upon terms satisfactory to the defendant. And in said agreement the defendant further promised that for and in consideration of the services to be rendered by the plaintiff as in this paragraph alleged, and if all said bonds should be sold and disposed of through or by the assistance of the said services of the plaintiff, or through or by the said services and assistance of the plaintiff in co-operation with the services and efforts of the defendant, its officers and agents, and such other persons or corporations as the said plaintiff might find and procure to assist therein, then the defendant should and would pay to the plaintiff a sum of money equal to 2½ per centum of the par value of said bonds, to wit, 2½ per centum of $50,000,000; but it was further agreed. between ·plaintiff and defendant, in and by the said agreement, that, unless: all the said bonds were so sold and disposed of, the defendant should not be· liable to the plaintiff on the said agreement, or for the payment to the plaintiff of any compensation or any sum of money whatever. That * ·*· * the plaintiff in the said city of New York, and in pursuance and performance· of the contract upon his part, rendered to the defendant the services therein: mentioned and performed all the conditions of said contract upon his part to be performed; and the plaintiff did find and procure, and cause to be found and procured, and there was found and procured by and through the assistance and services of the plaintiff, purchasers for all of the said first mortgage bonds of the defendant, and amounting to $50,000,000 par value thereof, and at a price and upon terms satisfactory to the defendant. On information and belief, that in the said city of New York the defendant accepted the offer of the said purchasers so found and procured, and sold all the said bonds to the said purchasers; and pursuant thereto, and on or about the 23d day of June, 1905, and in the said city of New York, the defendant executed, acknowledged, and delivered its certain mortgage, bearing date as of the 1st day of September, 1903, to the Bowling Green Trust Company * * * as trustee, to secure an issue of $50,000,000, par value, of its first mortgage 5· ·per cent. 30-year gold bonds, * *· * and the defendant thereupon agreed to sell and did sell in the city of New York all of the said bonds to the said purchasers procured and caused to be procured by the plaintiff, and by and through the assistance and services of the plaintiff as aforesaid; and that the plaintiff has duly performed all the terms and conditions of the said contract between the plaintiff and defendant to be performed by or on the part of the plaintiff. As partial payments and on account of the money due and to become due the plaintiff under the said contract, * * * the defendant paid to the plaintiff at different times in and prior to April, 1906, sums of money aggregating $5,100, but the said defendant has wholly failed and refused, and still fails and refuses, to pay to the plaintiff any other or further sum of money whatsoever, and there remains due and unpaid to the plaintiff

from the said defendant the sum of $1,244,900, with interest thereon at 6 per cent. per annum from the 23d day of June, 1905."

· The second cause of action differs from the first only· in the allegation as to the reasonable worth and value of the services of the plaintiff, and as follows:

"That the said services so rendered to the defendant by the plaintiff as aforesaid were of the value and were reasonably worth the sum of $1,250,000, which said sum became due and payable to the plaintiff on or before the 23d day of June, 1905."

A letter was written by the plaintiff to the defendant, dated May 18, 1906:

"I inclose you herewith my bill for services as broker in the placing of $50,000,000 bonds of your company, and would like you to kindly give this matter immediate consideration and send me check for the amount. The fact of my employment and the nature of the services rendered are undoubtedly within your knowledge."

The inclosed bill was dated May 18, 1906, and is as follows:

"Western Pacific R. Co. to Charles E. W. Smith, Dr. To services as broker in placing of the issue of $50,000,000 of bonds of said company, $1,250,000. Received on account, $5,100. Balance due, $1,244,900."

Under a stipulation, and for the purposes of the trial, the plaintiff offered in evidence a statement:

"That $49,725,000 face value of bonds secured by the first mortgage of the defendant, dated as of September 1, 1903, and executed June 23, 1905, were delivered to and paid for by a syndicate upon the following dates and in the following amounts, face value, respectively."

And there follow enumerated transactions, the first being June 29, 1905, and the last December 17, 1908. The stipulation proceeds:

"That the bonds above mentioned are $49,725,000 face value of the bonds intended to be referred to in plaintiff's complaint as having been sold as therein stated; that the defendant, while, for the purposes of the issue now on trial only, it admits the truth of the foregoing statements, hereby objects to the reception thereof, or any thereof, in evidence, upon the grounds that the same are irrelevant and immaterial, and that they are not admissible under the pleadings. That nothing contained herein shall be deemed to be a concession upon the part of the defendant that any such delivery or payment was pursuant to or connected with any contract or agreement between the plaintiff and the defendant, or any employment of the plaintiff by the defendant."

· It seems to me to be clear that the causes of action alleged in the complaint must be held to have accrued upon the date stated therein, to wit, the 23d of June, 1905. The allegations are that the defendant *accepted the offer of the said purchasers so found and procured,* and *sold* all the said bonds to the said purchasers, *and pursuant thereto,* and on or about the 23d day of June, 1905, executed and delivered its mortgage, in the first cause of action; and in the second cause of action, that the said services so rendered were worth $1,250,000, ·which said sum became due and payable to the plaintiff on or about the 23d day of June, 1905.

[2] ·If the mortgage was made pursuant to the acceptance by the defendant of the offer .of the purchasers found and procured, and to

whom all the bonds were sold, as is alleged, why, then the services of the broker were completed and his commissions became due, upon the well-settled doctrine that a broker has earned his commissions upon acceptance by his employer of the purchasers produced by him who were ready, willing, and able to perform upon the terms prescribed by the employer. That he was of that opinion is established by his statement that the sum became due and payable on that date, by his claim of interest therefrom, by his allegation of part payment, and by the submission of his bill. The facts sought to be established by the schedule of the bonds delivered and paid for by a syndicate at the dates mentioned, no more affect the question of when they were sold, and the right of this broker to recover his commissions, than does the question of when real estate is to be paid for under a contract for the purchase thereof upon partial and postponed payments, or upon the dates for the collection of rentals upon long-term leases, when a real estate broker sues for commissions in procuring the sale or leasing of real estate. His commissions are due when his services are rendered—that is, when he has brought the minds of the parties together and the transaction becomes a binding contract—unless there is a special reservation in the contract for the deferred payment of his commissions upon expressed contingencies. This contract was alleged to be oral. The plaintiff has himself set out the terms, he expressly alleges that he was a broker, and he sets up a brokerage contract, and he has himself fixed the terms of its completion and the date of his debt thereunder as of June 23, 1905. I can see no escape from the conclusion that the causes of action, if any, accrued upon said date.

[3] Second. The further question presented is whether, in an action in the courts of this state, brought by a nonresident against a foreign corporation, that foreign corporation may plead the statute of limitations of the state of which it is a resident and citizen. Sections 380 to 389 of the Code of Civil Procedure, our statute of limitations, originally were in substance section 74 et seq. of the Code of Procedure of 1848, and before that was part 3, c. 4, § 18 et seq., 2 R. S. p. 295 et seq., edition of 1829. Section 401, omitting the last sentence, was originally section 100 of the Code of Procedure, and before that was part 3, c. 4, § 27, 2 R. S. p. 297, and read as follows:

"Sec. 27. If at the time when any cause of action specified in this article shall accrue against any person, he shall be out of this state, such action may be commenced within the terms herein respectively limited after the return of such person into this state, and if after such cause of action shall have accrued such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."

In Olcott v. Tioga R. R. Co., 20 N. Y. 210, 75 Am. Dec. 393, it was held that foreign corporations are persons "outside of this state," within the meaning of the statute of limitations, which excepts from its operation cases where, at the time a cause of action accrues against any "person," he is outside of the state; that a foreign corporation sued in this state cannot avail itself of the statutes of limitations of New York, on the theory that a foreign corporation is incapable of

being present in a state other than that under whose laws it exists, and hence under all circumstances the foreign corporation is absent from all other states than that of its domicile.

As that case established that in the then condition of the law a foreign corporation could not plead the New York statutes of limitations, so, under the same statutes, Miller v. Brenham, 68 N. Y. 83, held:

"It is well settled in this state that a plea of the statute of limitations of the state or country where the contract is made is no bar to a suit brought in a foreign tribunal, and the lex fori governs all questions arising under the statute."

So that from 1859, when the Olcott Case was decided, until May 1, 1877, when section 390 of the Code of Civil Procedure went into effect, foreign corporations could not plead *any* statute of limitations in an action in the courts of this state.

Section 390, which was passed June 2, 1876, to take effect May 1, 1877, provided:

"Where a cause of action, which does not involve the title to or possession of real property within the state, accrues against a person, who is not then a resident of the state, an action cannot be brought thereon in a court of the state, against him or his personal representative, after the expiration of the time, limited, by the laws of his residence, for bringing a like action, except by a resident of the state, and in one of the following cases: 1. Where the cause of action originally accrued in favor of a resident of the state. 2. Where, before the expiration of the time so limited, the person, in whose favor it originally accrued, was or became a resident of the state; or the cause of action was assigned to, and thereafter continuously owned by a resident of the state."

The exceptions do not apply to the case at bar. The Olcott Case decided that the word "persons," used in the statute of limitations, is applicable to a foreign corporation. It seems clear, therefore, that in that state of the law a foreign corporation, as well as an individual, nonresident could plead in bar the statute of limitations of its domicile.

In 1877, chapter 416 of the Laws of that year, to take effect on September 1st thereof, amended section 401 by adding thereto:

"But this section does not apply while a designation made as prescribed in section 430 or in subdivision second of section 432 of this act remains in force."

Section 430 provides for a designation by a resident of the state of full age of a person upon whom service of process may be made, and section 432 provides for service of a summons upon a foreign corporation, and among the persons upon whom such service may be made is:

"2. To a person designated for the purpose, as provided in section 16 of the General Corporation Law."

Section 15 of the General Corporation Law (Consol. Laws 1909, c. 23) provides that:

"No foreign stock corporation, other than a moneyed corporation, shall do business in this state without having first procured from the secretary of state a certificate that it has complied with all the requirements of law to authorize it to do business in this state."

And section 16 provides that:

"Before granting such certificate, the secretary of state shall require every such foreign corporation to file in his office a sworn copy in the English language of its charter, or certificate of incorporation, and a statement under its corporate seal and the signature of its president, vice president or other acting head, particularly setting forth the business or objects of the corporation which it is engaged in carrying on, or which it proposes to carry on, within the state, and a place within the state which is to be its principal place of business, and designating a person upon whom process against the corporation may be served within the state."

In Wehrenberg v. N. Y., N. H. & H. R. R. Co., 124 App. Div. 205, 108 N. Y. Supp. 704, this court held that a foreign corporation which had strictly complied with the statute by filing the duly executed designation specified in section 16 of the General Corporation Law could plead the New York statute of limitations in bar, and overruled a demurrer interposed to an answer setting up such plea. Section 390 and section 401 do not seem to me to be at all in conflict, but are reasonably to be construed as consistent parts of a settled policy, and to definitely put an end to a harsh rule of law established by the Olcott Case, and together adapted to apply the remedy.

A nonresident individual and a foreign corporation, under section 390, in regard to causes of action which do not involve the title or possession of real property within this state, or a cause of action which originally accrued to or subsequently became possessed of by a resident of this state, could plead the statute of limitations of his or its own domicile; but if the nonresident individual, or if the foreign corporation, became qualified to do business within this state, by complying with our statutes permitting such business to be done, it acquired a residence pro hac vice, and then, upon filing a designation required by law, could avail itself of our own statutes of limitations.

[4] The tremendous increase in corporate activities, the fact that a very considerable portion of the business of the country is conducted by such artificial entities, and the further fact that, by the settled law of this state, its courts take jurisdiction of a foreign corporation upon service of process upon an officer or director casually within the state (Pope v. Terre Haute Car Mfg. Co., 87 N. Y. 137; Grant v. Cananea Cons. Copper Co., 189 N. Y. 241, 82 N. E. 191; Sadler v. Boston & Bolivia Rubber Co., 140 App. Div. 367, 125 N. Y. Supp. 405, affirmed 202 N. Y. 547, 95 N. E. 1139), justify the conclusion that, if the state opens its courts to a nonresident plaintiff to here sue a foreign corporation, he must take that privilege burdened with the duty of prompt action. He may not here prosecute a stale claim, outlawed in the courts of the defendant's domicile, through service upon a traveling officer accidentally within the state.

In the following cases section 390 has been considered in its relation to foreign corporations without any reference whatever to the sentence in section 401 here relied on to nullify the patent meaning of section 390:

In Clark v. Lake Shore & Mich. Southern R. R. Co., 94 N. Y. 217, the defendant corporation, which was the successor of the original

debtor, whose corporate origin was under the laws of Michigan and Illinois, proved upon the trial the statutes of limitations of those states, and claimed that they constituted a bar to the recovery. The Court of Appeals said:

"That contention rests upon the construction and effect of section 390 of the Code of Civil Procedure, read in connection with section 414; for it is agreed on both sides that, before September, 1877, when the Code took effect, the statutes of limitations of a foreign state constituted no defense to an action brought here. * * * Section 390 has changed that rule to some extent, and the argument at once comes to the point whether, under section 414, that change operates upon the cause of action in the case before us."

In that case the action had been brought in 1875, and the court considered the effect of the saving clause in section 414. The inference is fair that no one considered that section 401 was applicable.

In Penfield v. Chesapeake, Ohio & Southwestern Ry. Co. (C. C.) 29 Fed. 494, affirmed 134 U. S. 351, 10 Sup. Ct. 566, 33 L. Ed. 940, plaintiff brought suit against the railroad company, which set up the statute of limitations of Tennessee. The Circuit Court said:

"The defendant is a resident in and a citizen of Tennessee, and by virtue of section 390 of the New York Code of Civil Procedure the statute of Tennessee, limiting the time to commence an action like this, must control."

The Supreme Court said:

"As the railroad company is a corporation of Tennessee, where the injury occurred, and as the plaintiff was not a resident of New York when the cause of action originally accrued to him, the suit was barred by section 390, unless he became a resident of the latter state before the expiration of the period limited by the laws of Tennessee for the commencement of actions like this."

And as the court held that he did not, the judgment for the defendant was affirmed.

In Olsen v. Singer Mfg. Co., 138 App. Div. 467, 122 N. Y. Supp. 822, the plaintiff was not a resident of the state of New York, and the defendant was a foreign corporation which pleaded the statute of limitations of New Jersey in bar. The court required the plaintiff to reply. In the same case in 143 App. Div. 142, 127 N. Y. Supp. 697, it appeared that plaintiff replied, denying any information sufficient to form a belief as to the time limited by the statutes of New Jersey, and as to the allegation that the cause of action did not accrue in favor of a resident of the state of New York. Defendant thereupon moved for judgment on the pleadings. The court said:

"The plaintiff must be presumed to know what he claims his place of residence was at the time that the cause of action accrued, and the statute of New Jersey specifically pleaded in the answer is a public record, easy of access, affording him all the means of information necessary to obtain positive knowledge of the facts"

—and granted the motion for judgment for the defendant.

I am of the opinion that under section 390 of the Code of Civil Procedure the defendant has the right to plead in bar the statute of California, under the laws of which it was created and exists as a corporation, and that, as the cause of action here sued upon by a

nonresident plaintiff did not accrue within the time limited by said statutes, the judgment appealed from should be affirmed, with costs and disbursements to the respondent.   All concur.