## WEIDENFELD v. PACIFIC IMPROVEMENT CO.

(District Court, E. D. New York. September 7, 1920.)

1. **Bills and notes ⊕523—Evidence held to show indorsed note was delivered to defendant for collection.**

In an action for proceeds of a note, evidence that neither the original note nor the renewal note was entered on the books of the defendant, and that defendant had no record showing that anything was advanced for the note, with testimony of defendant's witness that it made no claim to the note, *held* to justify the jury's finding that the note indorsed by plaintiff was delivered to defendant for collection only.

2. **Evidence ⊕420(7)—Parol evidence admissible to show delivery of note for collection.**

Parol evidence is admissible to show that a note indorsed by plaintiff and delivered to defendant was delivered for collection only; such evidence merely tending to show a condition to the delivery, and not to deny the liability on the indorsement.

3. **Pleading ⊕345(1)—Complaint to recover money collected on note held not to allege unconditional indorsement, so as to authorize judgment on motion.**

In an action for the proceeds of a note, a complaint alleging that the note was duly indorsed and delivered to defendant does not entitle defendant to judgment on the pleadings, where it also alleged in detail the circumstances showing the delivery to have been conditional for collection and application on plaintiff's debt to defendant.

4. **Corporations ⊕417—President held to have authority to release collateral.**

The president of a corporation, who was shown by the testimony to have authority to release collateral, and to have released other collateral, had authority to act for the corporation in settling a disputed question and avoiding litigation, and in doing so to release collateral pledged to the corporation.

5. **Limitation of actions ⊕41—Claim barred by limitations as counterclaim not available as set-off.**

A claim which defendant cannot interpose against plaintiff as a counterclaim, because it is barred by limitations, is not available to him as a set-off against plaintiff's claim.

6. **Limitation of actions ⊕95(1)—Knowledge of cause of action essential.**

Where defendant, in settlement of a claim against plaintiff, took a note payable to plaintiff and secured by bonds already pledged to defendant for other notes, and thereafter defendant released a portion of the bonds from the prior pledge and agreed to apply the proceeds of the sale to plaintiff's note, plaintiff's right to sue for the proceeds of the sale of such bonds did not accrue until he knew that defendant had sold the particular bonds, though he knew that some of the bonds had been sold.

7. **Limitation of actions ⊕88—Action may be brought within limitation period after foreign corporation secures state license.**

Under Code Civ. Proc. N. Y. § 401, allowing an action accruing against a person without the state to be commenced within the time limited therefor after his return into the state, an action against a foreign corporation can be brought within the period of limitations after the corporation first procured a license to do business within the state, though the debt matured many years before.

8. **Limitation of actions ⊕88—Allowing action against foreign corporation securing license held not contrary to other statute.**

The application of Code Civ. Proc. N. Y. § 401, allowing actions after defendants acquired a residence within the state, to a foreign corporation first procuring a license within the state, does not make that statute

conflict with section 390, as amended by Laws 1916, c. 536, which relates generally to causes of action arising outside the state, without regard to the residence of the persons against whom they accrue.

**9. Equity ⊂⇒75—Estoppel ⊂⇒70(2)—Laches and estoppel not a bar, where delay was due to advice of counsel.**

The fact that the delay in bringing a cause of action was due to the advice of an attorney of recognized ability that plaintiff had no cause of action is a complete answer to the defense of estoppel and laches, especially where the defendant, by bringing suit on notes held by it, could have secured a settlement of all the issues involved.

At Law. Action by Camille Weidenfeld against the Pacific Improvement Company. On motion by defendant to set aside a verdict in favor of plaintiff. Motion denied.

Walter Jeffreys Carlin and Herman J. Witte, both of New York City (C. C. Daniels and Thomas Downs, both of New York City, of counsel), for plaintiff.

Larkin & Perry, of New York City (Adelbert Moot, of Buffalo, N. Y., and Orville C. Sanborn, of New York City, of counsel), for defendant.

GARVIN, District Judge. This is a motion by defendant to set aside a verdict in favor of the plaintiff for $74,746.87, with interest, after a trial before the court and jury. This sum is the amount of a promissory note (the renewal of a previous note) which reads as follows:

"$74,746.87.                    New York, February 25, 1897.

"The Central New York & Western R. R. Co., six months after date, and upon return of securities given, promise to pay C. Weidenfeld, or order, seventy-four thousand seven hundred forty-six and $^{87}/_{100}$ dollars, for value received, with interest at six per cent. per annum, having deposited with him as collateral security: Two hundred and eight thousand dollars ($208,000) Central New York & Western R. R. Co. 1st mortgage 5% bonds, with authority to sell the same or other security subsequently substituted, at the board of brokers, or at public or private sale, at their option, on the nonperformance of this promise and without further notice; applying the net proceeds to the payment of this note, including interest, and account to us for the surplus, if any. In case of deficiency, we promise to pay to said C. Weidenfeld the amount thereof, forthwith after such sale, with legal interest.

"The Central New York & Western R. R. Co.

"By [Signed] John Byrne, President.

"[Signed] F. R. Pemberton, Treasurer."

The motion is made upon the following grounds:

"(1) That it is contrary to the evidence and contrary to law.

"(2) Upon each and every exception taken by the defendant upon the trial to the rulings of the court denying defendant's motion at the beginning of the trial for judgment in favor of the defendant upon the controlling facts admitted in the pleadings; also upon each exception to the rulings of the court admitting evidence offered by the plaintiff to the admission of which the defendant objected and excepted; also to the ruling of the court denying defendant's motion to strike out the parol evidence of plaintiff tending to show a conversation contradicting or varying a written instrument; also to the exceptions taken to the rulings of the court denying defendant's separate motions for the direction of a verdict upon separate grounds stated; also to the

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

exceptions taken by defendant to the charges of the court, especially those leaving the case to the jury upon the basis of parol evidence as to the alleged agency of defendant for plaintiff; also to the exceptions taken by defendant to the charges by the court at the request of the plaintiff, and to the refusals of the court to charge as requested by the defendant.

"(3) Upon the ground that there was no evidence before the court and jury to show that the note of February 25, 1897, was worth its face value, and the evidence showed that it was made by a railroad company, already insolvent, that had made default in the payment of interest upon its bonds as early as January, 1894, and the jury had no evidence before them to show that said note had anything more than a mere nominal value; also that the bonds pledged by said note as collateral to it were subject to a prior pledge for a million dollars, from which pledge said bonds were never released and upon which pledge said bonds were duly sold November 10, 1897, and by such sale, if valid, defendant obtained good title to said bonds, and if invalid, the defendant still had lawful right to retain said bonds; also that the note in question was held by the defendant as a bona fide holder for value as collateral security to an antecedent debt and plaintiff established no cause of action with respect thereto."

The plaintiff, a stockbroker, has been actively engaged in business as such in New York City for many years. Prior to 1893 he was a member of the brokerage firm of I. B. Newcombe & Co. During that year and prior thereto said firm, having become indebted to defendant, on August 7, 1893, executed and delivered to the defendant five promissory notes, to the order of defendant, payable on demand, four for the sum of $1,000,000 each, and the fifth for the sum of $24,727.42. These notes recited the security held against them, and included among the securities so recited were 333 bonds of the Central New York & Western Railroad Company of the face amount of $1,000 each. Later it developed that this railroad company claimed to own 208 of the bonds, and after some negotiation an arrangement was made by which the note in suit was executed by the railroad to the plaintiff, and by him in turn indorsed and delivered to the defendant. Plaintiff claims that this delivery was for the purpose of collection only, the proceeds, when paid by the railroad company to defendant, to be credited upon the indebtedness of the Newcombe firm to defendant.

Defendant asserts that, when the note sued upon was executed, an agreement was made with plaintiff by which defendant undertook to turn over to the railroad 208 of the bonds in question, provided the note was paid when due; if it was not so paid, the bonds were to remain as part of the collateral securing the notes of the Newcombe firm. The questions presented for determination, and the rulings upon which defendant claims errors were committed at the trial, will be considered in order as they appear in defendant's brief.

[1] It is urged that no legal evidence was given to vary or contradict the terms of the note in suit, and consequently there is no legal foundation upon which to sustain the verdict of the jury. The testimony given by plaintiff, taken in connection with the proof that neither the original note nor the note in suit (the renewal note) was entered on the books of the defendant, although it was the custom to enter all notes received by it, and that defendant has no record to show that anything was advanced for the note, not to speak of the testimony of defendant's witness Vanderver that defendant makes no claim to

be entitled to the note, justified the jury's finding that the note was delivered for collection only.

[2] It is contended by defendant that plaintiff's testimony that the note was delivered for collection only was incompetent, because it tended to vary the express terms of the note. The case of Bank of U. S. v. Dunn, 6 Pet. 51, 8 L. Ed. 316, upon which reliance is had, was an action by a third party, into whose hands a note had come, against a prior indorser. It was there held that the defendant could not be permitted to show that he had indorsed the note under an agreement that he was to assume no responsibility, or at least would not be held liable on the note, until the security pledged for its payment had been exhausted. That case is not analogous to the action at bar, as is pointed out in Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204. In the Dunn Case, supra, an attempt was made to evade liability by proving a secret agreement; here plaintiff sought to show the condition upon which the note was delivered to the defendant by the plaintiff, and his right to offer proof that delivery was conditional is supported by ample authority. Benton v. Martin, 52 N. Y. 570; U. S. Nat. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. Rep. 615; Higgins v. Ridgway, 153 N. Y. 130, 47 N. E. 32, approved in Niblock v. Sprague, 200 N. Y. 390, 93 N. E. 1105; Grannis v. Stevens, 216 N. Y. 585, 111 N. E. 263.

[3] Defendant moved for judgment on the pleadings at the opening of the trial, asserting that the complaint set forth that plaintiff duly indorsed and delivered to defendant the note in suit. It appears, however, that the complaint alleges in great detail plaintiff's version of what occurred, particularly with reference to the agreement providing for a conditional delivery of the note, and alleges that the indorsement and delivery were pursuant to the agreement in question. The motion, therefore, was properly denied.

With regard to defendant's contention that plaintiff could not dispute the note in question by parol evidence, because, the note being a collateral note and promising the return of the securities therein pledged to the railroad company, the plaintiff could only properly use the note in such manner as to put the railroad company in a position legally to enforce the return of its securities to it, should the railroad company pay the note, the jury has found that defendant released the 208 bonds from the lien of the $4,000,000 notes and put them back of the note in suit.

[4] Defendant claims that as an officer of defendant, Hubbard, its president, had no power to make a binding promise to take the note from plaintiff 'for collection and give the latter the proceeds of the note. Corporations must act through officers, and it appears by the testimony that Hubbard had authority to release collateral, and that he actually did release collateral and act for the defendant in similar transactions. From the entire record the conclusion is warranted that the acts of defendant were in the ordinary course of business, and that what was done was for the purpose of adjusting differences, reaching a settlement of disputed questions, and avoiding litigation. Its presi-

dent had ample authority to act in its behalf in an endeavor to accomplish these purposes.

[5] If it claimed that error was committed in striking out the facts pleaded by defendant to show that it had a right to a set-off, because it is an established principle that in a case like this, in a state such as New York, set-off is a legal right not to be denied the defendant. As a matter of fact the testimony referring to the large notes was not struck out, but the court merely ruled that the counterclaim upon those notes was barred by the statute of limitations (with which the learned counsel for defendant agreed), and that for the same reason the notes could not be used as a set-off. If the large notes could not serve as the basis of an action against plaintiff, being barred by the statute, it is difficult to perceive why they should be permitted to defeat plaintiff's cause of action by pleading them as a set-off, which in itself presupposes a valid claim against plaintiff.

The verdict of the jury disposes of the claim that plaintiff was an interloper, having no cause of action against defendant. Nor can it be held that plaintiff proved no damage. The bonds of the railroad company had a substantial value, and if defendant had performed what the jury found was its agreement, ample would have been realized to pay the note,

[6] Defendant has pleaded that plaintiff's cause of action was barred by the statute of limitations, and argues that no demand for the proceeds of the collection of the note in suit or for the note and bonds (which demand was first made in 1918) was necessary, inasmuch as defendant had written a letter to plaintiff on November 17, 1897, giving notice that the bonds in question had been sold by defendant, thus giving the plaintiff the right to sue without a demand. Under the numerous authorities cited by defendant, this would be so if defendant at any time had conceded that any bonds identified as thereafter sold as collateral securing the large notes, had been put behind the note in suit, in the manner claimed by plaintiff. Upon the whole record it does not appear that any of the bonds sold by defendant in 1897 were the bonds which the jury had found were the bonds put behind the latter note, nor has defendant met the requirement that it must prove that it converted the identical 208 bonds that were back of the note in suit. Such must be held to be the law under Kilbourne v. Supervisors, etc., 137 N. Y. 170, at page 178, 33 N. E. 159. Very earnest, but unsuccessful, efforts were made during the trial by plaintiff's counsel, jury, and court to obtain from defendant an admission or an unequivocal statement to this effect. It should be observed, in addition, that if defendant relies on its conversion of the bonds, no conversion has been pleaded. On the contrary, defendant's amended answer alleged that no bonds were pledged as collateral to the note which is involved in this action.

But, however that may be, even if plaintiff's right of action accrued in 1897, it has not been barred by the statute of limitations. For some years prior to 1916 section 390 of the Code of Civil Procedure of the state of New York provided as follows:

"Where a cause of action, which does not involve the title to or possession of real property within the state, accrues against a person, who is not then a resident of the state, an action cannot be brought thereon in a court of the state, against him or his personal representative, after the expiration of the time, limited, by the laws of his residence, for bringing a like action, except by a resident of the state, and in one of the following cases:

"1. Where the cause of action originally accrued in favor of a resident of the state.

"2. Where, before the expiration of the time so limited, the person, in whose favor it originally accrued, was or became a resident of the state; or the cause of action was assigned to, and thereafter continuously owned by a resident of the state."

On May 15, 1916 (Laws 1916, c. 536), this section was amended to read as follows:

"Where a cause of action, which does not involve the title to or possession of real property, within the state, accrues against a person, who is not then a resident of the state, an action cannot be brought thereon in a court of the state, against him or his personal representative, after the expiration of the time, limited by the laws of his residence, for bringing a like action, provided that if the limitation of the time fixed by the laws of his residence for bringing such action be less than the time fixed by the laws of this state for a like action, the limitation fixed by the laws of this state shall apply. This section shall not apply to a case in which a person is entitled, when this section as amended takes effect, to commence such action, where he commences the same before the expiration of six months after this section as amended takes effect; in which case the provisions of law applicable thereto immediately before this section as amended takes effect shall continue to be so applicable, notwithstanding the repeal thereof."

[7] The plaintiff has at all times been a resident, the defendant a foreign corporation, not licensed to do business in this state prior to October, 1916, when it filed an application to do business here. Section 401 of the Code of Civil Procedure provides:

"If, when the cause of action accrues against a person, he is without the state, the action may be commenced within the time limted therefor, after his return into the state. If, after a cause of action has accrued against a person, he departs from the state, and remains continuously absent therefrom for the space of one year or more, or if, without the knowledge of the person entitled to maintain the action, he resides within the state under a false name, the time of his absence or of such residence within the state under such false name is not a part of the time, limited for the commencement of the action. But this section does not apply, while a designation, made as prescribed in section 430 or in subdivision second of section 432 of this act, remains in force."

This suit was brought in 1918. For many years a foreign corporation had no right to plead the statute of limitations. Olcott v. Tioga Railroad Co., 20 N. Y. 210, 75 Am. Dec. 393. The fact that the corporation had an office and agents within the state was immaterial. Rathbun v. Northern Central Railway Co., 50 N. Y. 656. This drastic prohibition has been modified, and a foreign corporation, having received a license to do business and designated a person within the state upon whom process may be served, may now avail itself of the statute of limitations when it is applicable. Comey v. United Surety Co., 217 N. Y. 268, 111 N. E. 832, Ann. Cas. 1917E, 424. If the defendant had filed no certificate by which it secured a license to do business within

the state, it undoubtedly could not have successfully maintained the defense of the statute of limitations, if plaintiff's right of action accrued in 1897; but once having elected to file its certificate and make a designation thereby obtaining the benefits incident thereto, it acquired a residence and upon filing a designation required by law it could then avail itself of our own statute of limitations, subject to the provisions of section 401 of the Code of Civil Procedure, which permits an action to be commenced within the time limited therefor, after a person absent from the state when a cause of action accrues against him returns.

[8] It is not contrary to section 390 of the Code of Civil Procedure, as amended, to hold that section 401 applies to the case at bar. Smith v. Western Pacific Railway Co., 154 App. Div. 130, 139 N. Y. Supp. 129. In the more recent case of Whiting v. Miller, 188 App. Div. 825, 176 N. Y. Supp. 639, upon which defendant relies, it is said:

"Section 390-a relates generally to causes of actions arising outside of the state, without regard to the residence of the persons against whom they accrue, excepting where the cause of action originally accrued in favor of a resident of this state. It may be that the provisions of section 401 of the Code of Civil Procedure, extending the statute of limitations with respect to a cause of action accruing against a person who is without the state or who departs from the state and remains continuously absent therefrom for the space of one year or more after the cause of action accrued, or resides in the state under a false name, still applies to some causes of action against nonresidents, who were such when the cause of action accrued. See Olcott v. Tioga Railroad Co., 20 N. Y. 210, 75 Am. Dec. 393; Mayer v. Friedman, 7 Hun, 218, affirmed 69 N. Y. 608; Moloney v. Tilton, 22 Misc. Rep. 682, 691, 51 N. Y. Supp. 19; Goldberg v. Lippmann, 6 Misc. Rep. 35, 25 N. Y. Supp. 1003; Plummer v. Lowenthal, 165 N. Y. Supp. 220. And in the case of Plummer v. Lowenthal, supra, the Appellate Term held that section 401 is applicable to the causes of action embraced in section 390-a. I am of opinion, however, that the provisions of said section 401 should not be deemed applicable to section 390 as so amended in 1916, and that the latter section should now be construed as embodying the only statute of limitations applicable to an action against a nonresident who was such when the cause of action accrued and when the action thereon was brought. See Isenberg v. Rainier, 145 App. Div. 256, 130 N. Y. Supp. 27, affirming 70 Misc. Rep. 498, 127 N. Y. Supp. 411."

It is apparent that this does not prevent the application of section 401 to the case at bar for the reason that this defendant was not a nonresident when the action was brought, having acquired a residence within the state by complying with our statutes by taking out a license to do business in the state. It must be held that the defendant thereby acquired a residence here. Smith v. Western Pacific Railway Co., supra.

I am of the opinion that the case at bar is one of those referred to in Whiting v. Miller, supra, which suggested that section 401 of the Code of Civil Procedure applies to "some causes of action against nonresidents, who were such when the cause of action accrued." The defendant's assertion that no equitable reason exists for applying section 401 to this case, in view of the fact that plaintiff could at any time have effected service of process on the defendant, within the state, loses much of its weight (if indeed this court has any power to force a construction of a statute because of such a consideration) in view of the uncontradicted testimony of plaintiff that he was advised many

years since by one of the then leaders of the bar, an attorney of recognized and conspicuous ability, that he had no cause of action.

[9] This is a complete answer also to the defense of estoppel and laches, even if estoppel and laches were a defense to an action of this character, which is exceedingly doubtful. Nor can the court ignore defendant's failure to bring suit upon the larger notes, within these many years. If defendant had begun action promptly, all of the questions involved would have been long since settled.

That this is an unusual case is no reason for disturbing the verdict of a jury, and upon a careful consideration of all of the reasons advanced by defendant, upon its motions to set aside the verdict and to dismiss the complaint, I am of the opinion that the motions must be denied.